NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUCY WOODS, INDIVIDUALLY, AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE ESTATE OF TARA WOODS, DECEASED; CARMEN SUAREZ, INDIVIDUALLY, AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE ESTATE OF RALPH HERNANDEZ, DECEASED; AND OLGA ALICIA MALAGA, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE ESTATE OF JESUS ANTONIO GONZALES; DECEASED, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; *et al.*, <br><br> Defendants. | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 07-593 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) by Defendant United States of America ("Defendant"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion to dismiss is **granted**.

I.  BACKGROUND

On September 22, 2005, the Special Agent in Charge ("SAC") of the Federal Bureau of Investigation's ("FBI") Newark Division authorized an undercover operation code-named "KING OF CLUBS" to investigate a criminal gang known as the "Latin Kings." (Mandrafina Dec. ¶¶ 4-5.) The KING OF CLUBS allegedly hosted meetings of criminal gang members, which were monitored by the FBI. (Complaint ¶ 66.) The KING OF CLUBS was located at 183-195 Railroad Avenue in Paterson, New Jersey (Complaint ¶¶ 26, 32.) The FBI utilized Lorenzo Gonzalez as a confidential informant relating to its efforts in the KING OF CLUBS. (Scala Dec. ¶¶ 4, 6.)

Plaintiff alleges that, on December 14, 2005, Gonzalez permitted Plaintiffs' decedents and others into the Railroad Avenue location, where they were shot during a robbery committed against them and Gonzalez by David Baylor, Hamid Shabazz, Reginald Barris and Beatriz Hernandez. (Complaint ¶¶ 71-81.) Gonzalez lived at the Railroad Avenue premises and was therefore able to permit people to enter. (Complaint ¶¶ 55, 56, 58, 59.) The FBI did not authorize him to engage in any otherwise illegal activity on the night the shootings occurred. (Scala Dec. ¶ 10.) The only allegedly illegal activity mentioned in the Complaint was selling alcohol and gambling.

Plaintiffs' arguments surround the manner in which the KING OF CLUBS was designed and operated in the selection and experience of Gonzalez and of

the supervision of the Special Agents and Gonzalez. The design, implementation, operation and supervision of an undercover operation and the selection, training and supervision of a Special Agent or informant are classic discretionary functions for which the Federal Tort Claims Act has not waived sovereign immunity. See 28 U.S.C. § 2680(a).

II.     STANDARD OF REVIEW: MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

Upon a FED. R. CIV. P. 12(b)(1) motion addressing the existence of subject matter jurisdiction over a plaintiff's complaint, "no presumptive truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D. N.J. 1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a FED. R. CIV. P. 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction.'" Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D. N.J. 2002) (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 176, 178 (3d Cir. 2000)). "Where an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited." Martinez, 875 F. Supp. at 1071 (citing Williamson, 645 F.2d at 413 n.6).

III.    DISCUSSION

    A.     **Plaintiffs Bear the Burden of Proving that the District Court has Subject Matter Jurisdiction**

3

Plaintiffs bear the burden of proof that the Court has subject matter jurisdiction to hear this case. See Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1977)). Further, "a facially sufficient complaint may be dismissed before an answer is served if it can be shown by affidavits that subject matter jurisdiction is lacking." Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269 (1936)).

The United States has sovereign immunity from suit, except to the extent that it consents to being sued. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act ("FTCA") provides a limited waiver of the United States' immunity from tort claims. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984) [hereinafter Varig Airlines]. Under the FTCA, the United States may be liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(l); see also 28 U.S.C. § 2674. The United States has certified that Defendants Robert Laughlin, Theresa Fanelli and Tim Buckley, the named FBI agents, were acting within the scope of their employment and, therefore, by operation of statute, the action is deemed to be against the United States and the United States is substituted as the Defendant.

See 28 U.S.C. § 2679(d); 28 C.F.R. § 15.3. Plaintiffs allege that the three named FBI agents were employees acting within the scope of their employment. (Complaint ¶¶ 43-44.) Therefore, the caption in this action should reflect that the United States is substituted in their place. Due regard must be given to the terms of the waiver of sovereign immunity because the United States can be liable only to the extent that it has waived its immunity. See Orleans v. United States, 425 U.S. 807, 814 (1976). As with all waivers of sovereign immunity, the FTCA must be strictly construed in favor of the federal government and not enlarged beyond the language of the statute. See United States v. Idaho ex rel. Dep't of Water Res., 508 U.S. 1, 7 (1993)

### B.     The FTCA'S Discretionary Function Exception

A claim that falls within one of the FTCA's statutory exceptions must be dismissed for lack of subject matter jurisdiction. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980). "Congress was careful to except in the Act's broad waiver of immunity several important classes of tort claims" in order to "protect certain governmental activities from exposure to suit by private individuals." Varig Airlines, 467 U.S. at 808. The FTCA is a discretionary function exception:

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The Supreme Court has recognized that this exception is

5

designed to prevent "second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," and has established a two-step test to determine whether it applies. See United States v. Gaubert, 499 U.S. 315, 323 (1991) (internal citations omitted); see also Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). The first step of the test requires the court to look at the challenged conduct and consider whether it involves an element of judgment or choice. See Gaubert, 499 U.S. at 322; Berkovitz, 486 U.S. at 536. To remove the conduct from the realm of discretion, a statute or regulation must be both mandatory and specific such that there is no "element of judgment or choice" and "[t]he employee has no rightful option but to adhere to the directive." Gaubert, 499 U.S. at 322. Here, Plaintiffs' claims – the selection and use of an informant with a criminal history, how the FBI should investigate, how to design and conduct an undercover investigation and supervising and training federal agents and the informant – are barred under an exception to the FTCA.

### 1. Selecting and Supervising the Informant

No federal statute, regulation or rule specifically prescribes how case agents must handle their informant or whom must be utilized as an informant. Conversely, case agents are given broad discretion in selecting and supervising informants. (Scala Dec. ¶¶ 5-7.) Case agents must balance numerous competing factors in deciding who, when and how to use an informant. (Scala

Dec. ¶¶ 5-7.)

The Third Circuit has held that the discretionary function exception protects the decision to use individuals with criminal histories as informants or operatives and how closely to supervise them. See Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986). Policy-based discretion was the guiding hand in decisions to use Gonzalez as a cooperating witness against the Latin Kings, to operate the undercover location and how closely to supervise him, so they are all protected by the discretionary function exception.

**2.      Claims Based on Whether to Investigate the Latin Kings**

The discretionary function exception also bars Plaintiffs' claims based on the decisions to investigate the Latin Kings and to use the informant and undercover operation to do so. By statute, the FBI "may . . . conduct such other investigations regarding official matters under the control of the Department of Justice . . . as may be directed by the Attorney General." 28 U.S.C. § 533. Likewise, the FBI's regulations provide that, in his authority to investigate violations of the law and collection of evidence, the FBI Director "may exercise so much of the authority vested in the Attorney General . . . as he determines necessary." Accordingly, the first prong of the Gaubert test is satisfied because the decision to investigate an alleged crime involves an element of judgment or choice. See United States v. Acorn Tech. Fund LLP, 429 F.3d 438, 445-46 (3d Cir. 2005); Bernitsky, 620 F.2d at 955; Gaubert, 322 U.S.

7

at 324. Such decisions are susceptible to policy analysis because they require the FBI (1) to allocate limited resources in light of its institutional priorities, (2) to make judgments that require the balancing of closely supervising an undercover operation or informant and endangering the informant or operation by being observed conducting surveillance and (3) to weigh the benefits of collecting evidence and prosecuting vicious gang-members against the risks that engaging with gang-members could cause harm to agents, informants and possible bystanders. The second prong of the test for the discretionary function exception is also satisfied because public policy considerations are involved.

How a government agent should conduct an investigation is the paradigm decision that is protected by the discretionary function exception. See Flax v. United States, 847 F. Supp. 1183, 1187 (D. N.J. 1994). Decision-making regarding the investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments. See Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986) (citing Bernitsky v. United States, 620 F.2d 948, 955 (3d Cir. 1980)); see also Torres-Dueno v. United States, 165 F. Supp. 2d 71, 74 (D.P.R. 2001); Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996).

Criminal gang investigations are dangerous, often leading to tragic consequences for undercover police officers, cooperating informants and bystanders. In conducting such investigations, FBI agents must balance

numerous factors, including: selection of effective investigative techniques to collect useful evidence of criminal activity; the availability and reliability of possible informants and cooperators; the use of undercover techniques; consideration of the danger to cooperators, informants, undercover agents and possible bystanders; weighing the danger inherent in participating in criminal acts with criminal gangs. These decisions are discretionary and are based upon considerations of public policy, so they are protected by the discretionary function exception.

### 3. The Decisions Whether to Use an Undercover Operation and How to Operate It

Both the initiation of the FBI undercover investigation and the manner in which it was carried-out are discretionary, policy-based acts. There is no statute, regulation or policy directive that mandates that the FBI choose to employ any particular investigative technique in carrying-out investigations and, thus, the FBI is vested with broad discretionary power to determine whether a particular investigative technique, such as an undercover operation, is an appropriate means by which to conduct investigations. (Mandrafina Dec. ¶¶ 6-7.)

The conduct involved in an undercover investigation involves the kind of policy-based considerations that are central to the discretionary function exception. When the FBI authorizes the manner of conducting such an investigation, the agency weighs the risks and benefits of the operation on a

9

case-by-case basis, giving careful consideration to various factors, including: (1) the risk of personal injury to individuals, property damage, financial loss to persons or businesses, damage to reputation or other harm to persons; (2) the risk of civil liability or other loss to the Government; (3) the risk of invasion of privacy or interference with privileged or confidential relationships; (4) the risk that individuals engaged in undercover operations may become involved in illegal conduct; and (5) the suitability of Government participation in the type of activity that is expected to occur during the operation. (Mandrafina Dec. Exh. A.) These considerations are grounded in social, economic and political policies that are susceptible to policy analysis and, thus, exempt from liability. See Gaubert, 499 U.S. at 323, 325. The same is plainly true, not only for the authorization of the investigation, but the manner in which it was carried-out. Under Gaubert, the discretionary function exception encompasses not only policy determinations, but "the acts of agency employees in executing the program." 499 U.S. at 325; see also Varig Airlines, 467 U.S. at 820.

Given the discretionary and policy-based nature of investigative decisions, courts have uniformly held various kinds of investigations to fall within the discretionary function exception. See Suter v. United States, 441 F.3d 306, 311-13 (4th Cir. 2006); Pooler, 787 F.2d at 871 (3d Cir. 1986); Frigard v. United States, 862 F.2d 201, 203 (9th Cir. 1988); Ga. Cas. & Sur. Co. v. United States, 823 F.2d 260, 262-63 (8th Cir. 1987).

Accordingly, the FBI's decisions – to place an informant in a position to

10

infiltrate violent criminal gangs and to allow him to associate with gang members and others for the purpose of monitoring the gangs, how to staff and operate the undercover operation, what activities to permit and whom to permit inside – are protected by the discretionary function exception.

### 4. Plaintiffs' Claims Based on the FBI's Supervision of its Agents or the Agents' Supervision of the Informant

The supervision of agency personnel and informants is discretionary and susceptible to policy-related judgments, such that tort claims predicated on negligent supervision are barred by the FTCA's discretionary function exception. See Bolduc v. United States, 402 F.3d 50, 60-61 (1st Cir. 2005); Attallah, 955 F.2d at 784-85; Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986). Thus, Plaintiffs claims based on the FBI's alleged failure to adequately supervise its agent in the handling of informants, or the agent's supervision of the informant's conduct, are barred by the FTCA's discretionary function exception.

Hiring and supervising decisions are the types of discretionary acts that are susceptible to policy analysis and, thus, fall within the discretionary function exception. The Supreme Court of the United States has recognized that supervisory decisions often involve practical considerations relating to staffing and funding that constitute policy-based judgments. See Varig Airlines, 467 U.S. at 820. Likewise, numerous courts of appeals have held that hiring and supervising government employees are the quintessential kinds of policy-

11

based discretionary decisions coming with the FTCA exception from liability. See, e.g., Burkhart v. WMATA, 112 F.3d 1207, 1217 (D.C. Cir. 1997); see also Vickers v. United States, 228 F.3d 944, 949 (9th Cir. 2000); Richman v. Straley, 48 F.3d 1139, 1146 (10th Cir. 1995); Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995).

Numerous policy decisions are involved in deciding how closely to supervise an informant or cooperator. The agents need to balance the need to collect useful, admissible evidence against the chance that the surveillance might be observed by the targets of the investigation. They have to balance the danger to the informant or cooperator created by the very nature of supervising him as he is engaged in collecting evidence of criminal activity and communicating with him regarding these activities.

### 5. Plaintiffs' Claims Related to Failure to Protect Them from Third Parties

The discretionary function exception also bars Plaintiffs' claims insofar as they are based on a failure to protect Plaintiffs from being harmed by third parties. The decisions of law enforcement agencies about whether and how best to protect members of the general public from the criminal activity of third parties are immunized under § 2680(a). See, e.g., Bergmann v. United States, 689 F.2d 789, 793 (8th Cir. 1982). Similarly, courts have found that the decisions of law enforcement agencies about whether and in what manner to protect informants and cooperating witnesses are protected by the exception.

12

See, e.g., Carrion v. United States, No. 85-3539 1989 WL 83404, *5 (E.D.N.Y. July 13, 1989); Piechowicz v. United States, 685 F. Supp. 497, 499-500 (D. Md. 1988).

Questions regarding how much security, and what type of security, is necessary to protect the public from crimes committed by third parties have repeatedly been held to involve the discretionary function exception. See Hughes v. United States, 110 F.3d 765 (11th Cir. 1997); Fazi v. United States, 935 F.2d 535 (2d Cir. 1991); Fanoele v. United States, 975 F. Supp. 1394 (D. Kan. 1997); Leslie v. United States, 986 F. Supp. 900, 905-06 (D. N.J. 1997); Higgins v. United States, 894 F. Supp. 232 (M.D.N.C. 1995). In addition to policy issues, the FBI had additional concerns, specifically the effect that security personnel and procedures would have discouraging gang members, the targets of the investigation, to appear and meet in order to be monitored. Whether additional or different security procedures could have been adopted, and whether the Plaintiffs' view the FBI's decisions as an abuse of discretion, the discretionary function exception nevertheless bars the claims. See Gen. Pub. Utils. Corp., 745 F.2d at 245.

    **C.**    **The Informant is Not a Government Employee**

        **1.**    **Defendant is Not Liable for Alleged Violations of Federal Guidelines**

Count 2 of the Complaint alleges that the FBI violated the Attorney General's guidelines with respect to authorized Otherwise Unlawful Activity by

the Informant. The FTCA, however, waives sovereign immunity for negligence claims under state law. It does not provide for liability for alleged violations of federal law or policy where there is no corresponding state-law duty. See Cecile Ind., Inc. v. United States, 793 F.2d 97, 99 (3d Cir. 1986).

### 2. Defendant is not Liable for Creating a Dangerous Condition

Count 8 of the Complaint alleges that the undercover operation created a condition that placed Plaintiffs in grave danger. The FTCA waives sovereign immunity for a government employee's negligence. The statute does not permit the imposition of liability under a common law theory of absolute liability for ownership of a dangerous commodity or for engaging in an extra-hazardous activity. See Conlon v. United States, 959 F. Supp. 683, 687 (D. N.J. 1997) (citing Dalehite v. United States, 346 U.S. 15, 44-45 (1953)); Dumanski v. United States, 486 F. Supp. 1078, 1092-93 (D. N.J. 1980) (citing Gibson v. United States, 567 F.2d 1237, 1243-44 (3d Cir. 1977)); Thompson v. United States, 592 F.2d 1104, 1107 (9th Cir. 1979) (citing Laird v. Nelms, 406 U.S. 797 (1972)).

### 3. Gonzalez Was Not Defendant's Agent or Employee

Plaintiffs allege that Gonzalez, as an informant, was a United States agent or employee. (Complaint ¶¶ 49, 53.) Generally, an informant, even if paid, is not considered a federal employee. See Slagle v. United States, 612 F.2d 1157, 1160-61 (9th Cir. 1980); Lippay v. Christos, 996 F.2d 1490, 1498-

14

99 (3d Cir. 1993); Thompson v. Dilger, 696 F. Supp. 1071, 1074 (E.D. Va. 1988).

Under the FTCA, the United States may be liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(l). "'Employee of the government' includes officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. Accordingly, whether one is an employee of the United States turns upon the degree of control the government has over the person's daily activities and that question is decided based on federal law. See Orleans v. United States, 425 U.S. 807 (1976); Logue v. United States, 412 U.S. 521 (1973).

The Complaint pleads no facts supporting an inference that Gonzalez, as a confidential informant, was supervised in his daily activities. (Scala Dec.¶ 10.) Gonzales was free to permit whomever he wished into his home and there is no indication that he was closely supervised in his daily activities, but rather he was specifically instructed that he was not a government employee and was not permitted to hold himself out as such. (Scala Dec. ¶ 11.) Therefore, Gonzalez was not a government employee and his conduct cannot be the basis for any governmental liability.

15

**IV.**     C<span>ONCLUSION</span>

For the reasons stated, it is the finding of this Court that Defendant's motion to dismiss is **granted**.  An appropriate Order accompanies this Opinion.

                                                                    S/ Dennis M. Cavanaugh
                                                                    Dennis M. Cavanaugh, U.S.D.J.

Date:         October 31, 2007
Orig.:        Clerk
cc:           Counsel of Record
              The Honorable Mark Falk, U.S.M.J.
              File